United States Court of Appeals,

Eleventh Circuit.

No. 96-4756.

Rosanna TALAVERA, Gerard Talavera, Plaintiffs-Appellants,

v.

SCHOOL BOARD OF PALM BEACH COUNTY, Anabelle Hart, individually and in her official capacity as Guidance Coordinator for Atlantic High School, James D. Williams, individually and in his official capacity as Assistant Principal at Atlantic High School, et al., Defendants-Appellees.

Nov. 24, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8110-CI-KMM), K. Michael Moore, Judge.

Before ANDERSON, DUBINA and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

This appeal presents an issue of first impression in this circuit: does a plaintiff's certification on an application for social security disability benefits that she is totally disabled bar her from asserting in a subsequent claim under the Americans With Disabilities Act that she is capable, with reasonable accommodation, of performing the essential functions of her job? We join the majority of our sister circuits and answer the question in the negative.

I. BACKGROUND

Plaintiff Rosanna Talavera ("Talavera") began working for the School Board of Palm Beach County ("the school board") as a secretary in April 1990. She had a one-year, renewable employment contract. Her job required her to stand at a counter for four to five hours each day scheduling appointments for students to see a guidance counselor. In September 1992, Talavera began experiencing back pain and consulted a physician. She claims the doctor told her to elevate

her leg and avoid standing for long periods. Talavera requested several workplace accommodations, including the provision of a special chair and a handicapped parking place, but she claims the school board did not provide them.

Talavera's condition worsened. In March 1993, she applied for a transfer to a position in the school board's main office which would have permitted her to sit all day. The school board informed Talavera that she had the job, then called back two days later and told her the position had been "blocked." Immediately thereafter, the school board sent Talavera a letter stating that it would not renew her contract when it expired on June 30, 1993. In early April 1993, the school board involuntarily transferred Talavera to a position in the records filing area. Talavera was unable to perform the job because it required her to stand all day. Talavera became bedridden in May 1993, after which she took unpaid leave until her contract expired.

Talavera has two bulging discs in her back. She has been diagnosed with chronic osteoarthritis and fibroid myalgia. Talavera applied for social security disability ("SSD") benefits in September 1993. Her application included the following statements:

> I cannot stand up for more than 5 minutes. I cannot walk more than a few hundred feet....
>
> To try and compensate [at my job] I registered students sitting at my desk. As far as filing I used to take a chair to sit. I also lost a lot of days because at times I wasn't able to leave the house or get out of bed. Since then I wasn't reappointed & lost my job. No provisions were made for my handicap....
>
> I am in extreme pain & have trouble walking. I am in need of medical attention but cannot afford it.... I cannot walk to transportation & be able to climb up stairs to bus or train. I am now homebound.
>
> I feel that my skills are good. However, I can no longer walk, bend, etc. Therefore when an employer sees me I look totally disabled. My mind is intact but my physical appearance is a deterrent. Unfortunately our society is only concerned with your appearance. I am finding it harder and harder to walk.

Disability Report 1-6. In October 1993, the Social Security Administration ("SSA") determined that

Talavera was totally disabled and awarded her benefits, which she continues to receive.

Talavera filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in April 1993. She and her husband filed suit in the district court in March 1994. Talavera alleged that the school board violated her rights under the Americans With Disabilities Act of 1991 ("ADA"), 42 U.S.C. § 12101 *et seq.,* by failing to accommodate her disability and then terminating her because of it. Talavera's husband brought a claim for loss of consortium.[1]

The district court granted summary judgment in favor of the school board on two alternative grounds: (1) Talavera was judicially estopped from claiming she was a "qualified" individual with a disability under the ADA, having certified to the SSA that she was totally disabled; and (2) Talavera failed to raise a genuine issue of material fact as to whether she could perform the essential functions of her job. Plaintiffs then perfected this appeal. In addition to the parties' briefs, we have the benefit of an *amicus* brief from the EEOC supporting Talavera's position.

## II. ISSUES

A. Did the district court properly rule that Talavera's application for SSD benefits judicially estops her from claiming in this action that she is a "qualified individual with a disability" entitled to protection under the ADA?

B. Did the district court properly rule that Talavera failed to raise a genuine issue of material fact as to whether she is a "qualified individual with a disability"?[2]

## III. STANDARDS OF REVIEW

---

[1]The Talaveras brought suit against several individual defendants, as well. On appeal, they pursue only their claims against the school board.

[2]The school board also seeks summary judgment on the ground that Talavera was not "disabled" within the meaning of the ADA when the alleged violations occurred. The school board did not raise this argument before the district court; therefore, we will not consider it now. *See Rozar v. Mullis,* 85 F.3d 556, 564 (11th Cir.1996).

We review a district court's grant of summary judgment *de novo,* applying the same standard used by the district court. *Scala v. City of Winter Park,* 116 F.3d 1396, 1398 (11th Cir.1997). "Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

The school board argues that we should review the district court's application of judicial estoppel for abuse of discretion. *See McNemar v. Disney Store, Inc.,* 91 F.3d 610, 616-17 (3rd Cir.1996) (applying abuse of discretion review), *cert. denied,* --- U.S. ----, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997); *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir.1993) (same). Although this circuit has not explicitly identified the applicable standard of review, the language in the few Eleventh Circuit cases involving judicial estoppel is consistent with abuse of discretion review. *See, e.g., Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1261 (11th Cir.1988) ("We think it proper simply to review the bankruptcy court's application of judicial estoppel to ascertain whether it was consonant with the policy interests which originally gave rise to the doctrine."). We note that "[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States,* --- U.S. ----, ----, 116 S.Ct. 2035, 2048, 135 L.Ed.2d 392 (1996).

## IV. DISCUSSION

Talavera claims that the school board violated her rights under the ADA by failing to provide reasonable accommodations for her disability and terminating her because of her disability. To establish a prima facie case under the ADA, Talavera must show (1) that she has a disability; (2) that she is qualified for the position in question; and (3) that the school board discriminated against her because of her disability. *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); 42 U.S.C. § 12102(2).

The ADA defines a "qualified" individual as "an individual with a disability who, *with or without reasonable accommodation,* can perform the essential functions" of the job she holds or desires. 42 U.S.C. § 12111(8) (emphasis added). If a qualified individual with a disability requires a reasonable accommodation to perform the essential functions of her job, then the ADA requires the employer to provide the accommodation unless the employer can demonstrate that doing so would constitute an undue hardship. 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations may include job restructuring, part-time or modified work schedules, and acquisition or modification of equipment or devices. 42 U.S.C. § 12111(9).

## A. *Judicial Estoppel*

The district court ruled that Talavera could not establish a prima facie case because she was judicially estopped from claiming she was "qualified" under the ADA. The district court found Talavera's application for and receipt of SSD benefits fundamentally incompatible with her position in this lawsuit that she could perform the essential functions of her job with reasonable accommodation. Accordingly, the district court invoked judicial estoppel. Judicial estoppel "is applied to the calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *McKinnon v. Blue Cross & Blue Shield of Ala.,* 935 F.2d 1187, 1192 (11th Cir.1991) (quoting *American Nat'l Bank v. Federal Dep. Ins. Corp.,* 710 F.2d 1528, 1536 (11th Cir.1983)).

This circuit has not addressed the effect of an application for disability benefits upon a subsequent ADA claim. Numerous other circuit and district courts have addressed the issue, including several district courts in this circuit. The holdings of these courts vary widely.

The Third Circuit has held that a plaintiff who certifies total disability on an application for benefits is judicially estopped from later bringing an ADA claim. *McNemar v. Disney Store, Inc.,*

91 F.3d 610 (3rd Cir.1996). In *McNemar,* the plaintiff (McNemar) was terminated from his position as assistant manager at a Disney Store for theft after divulging that he was HIV positive. McNemar then applied for SSD benefits and stated on the standardized application form that he was totally disabled and unable to work as of five weeks prior to his discharge. He made similar statements on applications for forbearance of student loan payments and state disability benefits. Shortly thereafter, McNemar brought disability claims against the Disney Store under both the ADA and state law. The district court dismissed the disability claims on judicial estoppel grounds, and the Third Circuit affirmed. According to the Third Circuit, "[c]learly McNemar has asserted inconsistent positions regarding his ability to work." *Id.* at 618. He certified in his applications for benefits that he was totally and permanently disabled and unable to work and earn money; but in his disability claims he stated he could perform the essential functions of his job. *Id.* The court further observed that the ADA was not intended to cover people who are unable to work. Accordingly, the court held that the district court properly applied the doctrine of judicial estoppel.

Some confusion has arisen regarding the holding in *McNemar,* particularly as to whether it created a *per se* rule of judicial estoppel. Some courts, along with the EEOC, have interpreted *McNemar* as creating a *per se* rule. *See, e.g., Dush v. Appleton Elec. Co.,* 124 F.3d 957, 961 (8th Cir.1997) (stating that the Third Circuit in *McNemar* affirmed the district court's application of "judicial estoppel as a per se bar"); *Norris v. Allied-Sysco Food Servs., Inc.,* 948 F.Supp. 1418, 1441 (N.D.Cal.1996) (listing *McNemar* as one of the cases holding that judicial estoppel creates a *per se* bar); and EEOC Notice No. 915.002, 31 Daily Lab. Rep. (BNA) E-1 at 14 (Feb. 14, 1997) (criticizing the *McNemar* court for failing "to conduct the individualized inquiry mandated by the ADA definition of "qualified individual with a disability' ").

However, in *Krouse v. American Sterilizer Co.,* 126 F.3d 494 (3rd Cir.1997), Judge Becker,

writing for a panel of the Third Circuit, responded to the "considerable criticism" of the *McNemar* decision and indicated that *McNemar* articulated a relatively fact-specific holding. *Id.* at 503 nn. 3 & 5. The district court in *Krouse* granted summary judgment on the ground that the plaintiff was judicially estopped from establishing the qualifications element of his ADA claim. Although the Third Circuit affirmed on different grounds, the court stated in a footnote that "district courts in this circuit are misapplying *McNemar* without first considering the unique facts of that case." *Id.* at 503 n. 5. The court instructed that "[c]ourts should not assume that *McNemar* always bars an individual's ADA claims merely because prior representations or determinations of disability exist in the record." *Id.* Another footnote stated that "Judge Becker is persuaded ... that McNemar was wrongly decided, and believes that the court should reconsider it at its first opportunity." *Id.* at 503 n. 4.

Taking into consideration the *Krouse* court's discussion of *McNemar,* it appears that no court of appeals has adopted the position that a plaintiff who has claimed total disability on a benefits application is *per se* estopped from claiming he could work with reasonable accommodations under the ADA. However, numerous district courts have so held, including at least one in this circuit. *See, e.g., Thomas v. Fort Myers Housing Auth'y,* 955 F.Supp. 1463 (M.D.Fla.1997); *Simon v. Safelite Glass Corp.,* 943 F.Supp. 261 (E.D.N.Y.1996); *Reiff v. Interim Personnel, Inc.,* 906 F.Supp. 1280 (D.Minn.1995); *Nguyen v. IBP, Inc.,* 905 F.Supp. 1471, 1484-85 (D.Kan.1995).

At the opposite end of the spectrum, the District of Columbia Circuit has held that representations on an application for disability benefits are merely one piece of evidence that an ADA plaintiff is not "qualified," rather than an absolute bar. *See Swanks v. Washington Metro. Area Transit Auth'y,* 116 F.3d 582 (D.C.Cir.1997). In *Swanks,* the plaintiff (Swanks), who suffered from spinal bifida, sought and received SSD benefits after he was fired from his job as a police officer with the transit authority. Swanks then filed an ADA claim, alleging that the transit authority

refused to accommodate his disability and then fired him because of it. The district court entered summary judgment for the transit authority because Swanks' "disability determination renders [him] unqualified for the position which he held either as it was or with a reasonable accommodation." *Id.* at 584. The court of appeals reversed.

The court of appeals began by outlining the SSD application process. *Id.* at 584-85. Under the Social Security Act, an individual is entitled to disability benefits

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him.

42 U.S.C. § 423(d)(2)(A). The Act does not address the effect of a reasonable accommodation on a claimant's disability status. In administering the Act, the SSA has developed a five-step procedure for evaluating disability claims. 20 C.F.R. § 404.1520 (1996). The five steps are as follows:

> (1) The SSA ascertains whether the claimant is currently engaged in "substantial gainful activity." If so, the agency denies the application; if not, it proceeds to step two.
>
> (2) The agency determines whether the claimant has a "severe" impairment. If not, the application is denied. If so, the agency proceeds to step three.
>
> (3) The agency checks whether the impairment is listed as presumptively disabling in the regulations.[3] If the claimant's condition is listed, the agency awards with no further inquiry. If the condition is not listed, the agency proceeds to step four.
>
> (4) The agency determines whether the claimant is able to perform his past work. If so, benefits are denied. If not, the agency proceeds to the final step.
>
> (5) Considering the claimant's age, educational experience, past work experience, and residual functional capacity, the agency determines whether the claimant can do "other work"—*i.e.,* jobs "that exist in significant number in the national economy." 20 C.F.R. § 1560(c). If so, the agency denies the application. If not, the agency awards benefits.

---

[3]The list includes conditions such as certain spinal disorders, certain amputations, epilepsy, etc. 20 C.F.R. § 404.1520(d).

After explaining this procedure, the *Swanks* court pointed out that "[n]owhere in this five-step process does the Social Security Administration take account of the possible effect of reasonable accommodation on a claimant's ability to work." *Swanks,* 116 F.3d at 585. A claimant can be found disabled at the third step if she has a "listed" impairment, with no inquiry into her actual ability to work. In addition, a claimant can be deemed eligible for benefits at the fifth step, where the inquiry focuses on the general availability of particular types of work and not on whether a reasonable accommodation would enable a claimant to work.[4] In short, an individual can meet the requirements for SSD eligibility and still be a "qualified individual with a disability" under the ADA.[5] The *Swanks* court recognized that there is no inherent inconsistency.

However, the *Swanks* court noted that specific representations a particular individual makes in the benefits application process may be relevant to a subsequent ADA claim. "For example, ADA plaintiffs who in support of claims for disability benefits tell the SSA they cannot perform the essential functions of their job *even with accommodation* could well be barred from asserting, for ADA purposes, that accommodation would have allowed them to perform that same job." *Id.* at 587 (emphasis added). Thus, the *Swanks* court declined to apply estoppel in all such cases in favor of a case-by-case inquiry that examines the specific statements a disability discrimination plaintiff makes in connection with applications for disability benefits.

---

[4]Indeed, the SSA has issued an Information Memorandum explicitly stating that, for the purpose of the fifth step assessment, "[w]hether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant." Daniel L. Skoler, Assoc. Comm'r, SSA, DISABILITIES ACT INFO. MEM. at 3, (June 2, 1993) (No. SG3P2). The Memorandum also stresses that "[h]ypothetical inquiries about whether an employer would or could make accommodations that would allow return to a prior job would not be appropriate." *Id.*

[5]Both the SSA and the EEOC have taken the position that there is no inherent inconsistency. *See Swanks,* 116 F.3d at 586.

While declining to establish a *per se* rule of judicial estoppel, other circuit courts have shown reluctance to hold that individuals who are "totally disabled" for SSD purposes are covered by the ADA. In *Cleveland v. Policy Mgmt. Sys. Corp.,* 120 F.3d 513 (5th Cir.1997), the Fifth Circuit held that there is a "rebuttable presumption" that an applicant for or recipient of SSD benefits is not a "qualified individual with a disability." *Id.* at 518. Despite its obvious skepticism, the court stopped short of holding that all SSD applications should be estopped: "It is at least theoretically conceivable that under some limited and highly unusual set of circumstances the two claims would not necessarily be mutually exclusive ..." *Id.* at 517. In *Dush v. Appleton Elec. Co.,* 124 F.3d 957 (8th Cir.1997), the Eighth Circuit ruled that an ADA plaintiff who had characterized herself as "totally disabled" in a previous workers' compensation proceeding failed to present evidence showing she was a "qualified individual with a disability." Although the court declined to hold that judicial estoppel precluded *all* such plaintiffs from proceeding with an ADA claim,[6] it made the following observations:

> Where, as here, the party opposing the [summary judgment] motion has made sworn statements attesting to her total disability and has actually received payments as a result of her condition, the courts should carefully scrutinize the evidence she marshals in an attempt to show she is covered by the ADA. The burden faced by ADA claimants in this position is, by their own making, particularly cumbersome, for summary judgment should issue unless there is strong countervailing evidence that the employee ... is, in fact, qualified.

*Id.* at 963 (citation omitted).

Still other courts of appeals presented with this question have limited themselves to the facts of their cases, without articulating any broad rules. *See Blanton v. Inco Alloys Int'l, Inc.,* 108 F.3d 104 (6th Cir.1997) (judicial estoppel barred plaintiff's claim that he was qualified for former position as extrusion press crew leader because he specifically represented on disability benefits application

---

[6]The *Dush* court explicitly declined to reach the issue of judicial estoppel.

that he could *not* perform that job, but plaintiff was not estopped from claiming he was qualified for vacant light duty position);[7] *D'Aprile v. Fleet Servs. Corp.,* 92 F.3d 1, 4 (1st Cir.1996) (ADA plaintiff's statements on application for disability benefits "may not have constituted [a] broad admission of incapacity," so the ADA claim was not automatically barred); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1480-82 (9th Cir.1996) (examining entire record, including ADA plaintiff's statements on SSD application, to find no genuine issue of fact that plaintiff was not "qualified");[8] *Weigel v. Target Stores,* 122 F.3d 461, 466-67 (7th Cir.1997) (explaining that an SSA total disability determination, while relevant, is not dispositive of the issue of an ADA claimant's status as a "qualified individual with a disability").

We agree with the majority of our sister circuits that a certification of total disability on an SSD benefits application is not inherently inconsistent with being a "qualified individual with a disability" under the ADA. A certification of total disability on an SSD application does mean that the applicant cannot perform the essential functions of her job without reasonable accommodation. It does not necessarily mean that the applicant cannot perform the essential functions of her job *with* reasonable accommodation. Whether in any particular situation there is an inconsistency between applying for SSD benefits and bringing an ADA claim will depend upon the facts of the case, including the specific representations made in the application for disability benefits and the nature and extent of the medical evidence in the record. However, we do hold that an ADA plaintiff is estopped from denying the truth of any statements made in her disability application. Our basis for this holding is that an ADA plaintiff should not be permitted to disavow any statements she made

[7]The Sixth Circuit applies judicial estoppel only to "*successful* assertions made in one proceeding when a contrary assertion is made in another." *Blanton,* 108 F.3d at 109.

[8]The Ninth Circuit also declined to consider whether the doctrine of judicial estoppel applied. *Kennedy,* 90 F.3d at 1481 n. 3.

in order to obtain SSD benefits.

After examining the record in this case, we hold that the district court abused its discretion in applying a *per se* rule of judicial estoppel. Talavera stated on her application that she had great difficulty walking and standing for any length of time. However, she made no statements indicating that she could not perform her job if she were accorded reasonable accommodation. To the contrary, she stated that "[n]o provision was made for my handicap" at work. Disability Report 1-6. She also explained: "I feel that my skills are good. However, I can no longer walk, bend, etc. Therefore when an employer sees me I look totally disabled. My mind is intact but my physical appearance is a deterrent. Unfortunately our society is only concerned with your appearance." *Id.* These statements indicate that Talavera felt she remained able to work. They are not inconsistent with her position in the ADA claim that she was "qualified." Therefore, *per se* judicial estoppel is not warranted in this case.

B. *"Qualified Individual with a Disability"*

As for the district court's alternative ruling, we hold that genuine issues of material fact preclude summary judgment on the question of whether Talavera was "qualified" under the ADA. Thus, the district court erred by finding that summary judgment would be warranted even if judicial estoppel were not applied. The district court pointed to Talavera's statements in her SSD benefits application that she could not stand more than five minutes, walk more than 100 feet, nor bend; that at times she could not get out of bed or leave the house; that she was home-bound; and that her doctor told her she was "totally disabled." Dist. Ct. Op. at 9. The district court properly considered those statements as true because, as we have pointed out, Talavera is estopped from denying any statements she made in her SSD application. However, there is still a dispute of fact as to whether Talavera's problems walking and standing rendered her unable to perform the essential functions of

her job, with accommodation.

Talavera sought permission to perform her filing and scheduling duties while seated in a chair. She also requested a handicapped parking place to minimize the distance she had to walk to and from the cafeteria. Finally, she applied for and received a different secretarial position within the school board which would have involved sitting all day, but the school board "blocked" the transfer and decided not to renew Talavera's contract. It is not clear from the present record whether these accommodations would have been reasonable or whether they would have enabled Talavera to perform the essential functions of her job. Indeed, the record does not indicate what the essential functions of Talavera's job were (either her initial position in the guidance office or the position for which she sought a transfer). However, Talavera presented the affidavits of her doctors and a rehabilitation expert, who averred that Talavera could have continued to work had the school board limited her need to stand and walk by providing her with a wheelchair, ergonomically correct chair, or sedentary position; and restricted her lifting. Additionally, Talavera states that the only reason she was homebound was that after her termination she was unable to keep her car, and her physical limitations prevented her from using public transportation. This evidence renders inappropriate summary judgment on the issue of Talavera's ability to perform her job with reasonable accommodation.

## V. CONCLUSION

We decline to adopt the position that SSD recipients are judicially estopped in all circumstances from bringing claims under the ADA. In this case, accepting Talavera's SSD application statements as true, those statements do not rule out the possibility that she could perform the essential functions of her job with reasonable accommodation. Moreover, the record indicates that issues of fact remain as to whether Talavera was "qualified" under the ADA. We reverse the

district court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.