714 So.2d 1103 (1998)
Danny SMITH, Appellant,
v.
AVATAR PROPERTIES, INC., et al., Appellees.
No. 97-1434.
District Court of Appeal of Florida, Fifth District.
July 10, 1998.
*1104 Richard J. Manno of Morgan, Colling & Gilbert, P.A., Orlando, and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellant.
Richard A. DuRose, John R. Hamilton and John S. Lord, Jr., of Foley & Lardner, Orlando, for Appellees.
*1105 PETERSON, Judge.
Danny Smith appeals an order summarily dismissing his claim of employment discrimination based on a "handicap"[1] under the Florida Civil Rights Act of 1992 (FCRA), sections 760.01-11, Florida Statutes (1994), in favor of his former employer, Avatar Properties, Inc., and Kissimmee Construction Co. (collectively, Avatar).
Smith is a forty-nine year old man, who worked for Avatar for approximately 11 years, as a dump truck driver, as a heavy equipment operator, as a pug mill operator, and as a pipe layer. His employment record was unmarred. During the course of his employment, he suffered two heart attacks, one in 1984 and one in 1991, both of which required open heart surgery. He was able to return to light duty work after these heart attacks and was eventually given full medical release to return to heavier duties.
Suffering with angina pains in May 1994, he consulted his physician who advised him not to work. Following further medical examination, Smith was diagnosed with coronary artery disease and chronic obstructive lung disease.
On September 27, 1994, during that period of time in which his treating physician was of the opinion that Smith should not return to work, he applied for but was denied social security disability (SSD) benefits. On October 11, 1994, Smith's physician told him that he could return to light duty work.
When Smith attempted to return to light duty work, Avatar told him that no such work was available. Contrarily, he believed, that at that time, Avatar needed a fuel truck driver, a parts runner, and meter readers, all of which are light duty jobs. He claims that he was further informed by a co-worker that Avatar's supervisor just did not want to give him a job. Smith suspected that a past bad personal experience with the supervisor resulted in a personal grudge. He again approached the supervisor about light duty work, and was offered a desk job in Barefoot Bay. He did not accept the offer, however, because Barefoot Bay was 60-80 miles away from his home. Smith then asked another supervisor about light duty work and was assured that he would check into it, but Smith never heard anything further about his inquiry. Two weeks later, he again inquired about light duty work, but the original supervisor informed him that he was being terminated based on his inability to work.
Shortly after his termination, Smith moved to Oklahoma, and although he has applied for numerous jobs, he has not been successful in acquiring employment; he believes it is because of the status of his health. Once again he made a claim for SSD benefits, citing his disabling heart condition as the reason for his inability to work. He also sought damages from Avatar for employment discrimination based on disability under FCRA, alleging an ability to work with accommodation.
In his SSD claim, Smith alleged that, "I became unable to work because of my disabling condition on June 1, 1994," and that, "I am still disabled." A disability report filed the same month, July 1995, stated that his disabling condition is "heart and lung trouble", and that his condition kept him from working. The Social Security Administration denied his claim, concluding that his condition did not keep him from performing less demanding work. He applied for reconsideration stating that, "I am unable to work," but he was again denied relief.
*1106 Smith then requested a hearing before an administrative law judge who found in November, 1996, that Smith should receive SSD benefits:
The claimant is a 48-year old man who alleges disability since June 1, 1994, due to coronary heart disease. He has no education, is illiterate, and has relevant work experience as a heavy equipment operator and as a gas station attendant. There is no evidence he has engaged in substantial gainful activity since the alleged onset date of disability.
The claimant has medically-determined impairments which impose significant limitations on his ability to engage in work or work-like activities. These impairments include coronary heart disease.... [The] evidence [of his impairments] is accorded significant weight and there is no substantial evidence to the contrary. There is no evidence the claimant's impairments are remediable by reasonable therapy that has not been attempted yet nor evidence that claimant has not been compliant properly with prescribed therapy.
Consideration was given to the findings of fact of the state medical consultants. The testimony of the impartial medical expert and the medical documentation from the treating and examining sources obtained subsequent to the issuance of the initial and reconsideration determinations outweighs those prior findings of fact. The entire medical record provides substantial evidence to support a conclusion the claimant's impairments are severe and meet a listing.
* * * * * *
FINDINGS
1. The claimant meets the disability insured status requirements of the Social Security Act.
2. The claimant has not engaged in substantial gainful activity since the alleged onset date.
3. The claimant has medically determinable impairments which impose significant limitations on his ability to engage in work or work-like activities.
4. The claimant's impairments meet the criteria of an impairment listed in Appendix 1 to Regulations No. 4. Therefore, the claimant is disabled.
5. The prior determination and decision should be reopened and/or revised based on the record in this case.
DECISION
The claimant was disabled on June 1, 1994, and is entitled to a period of disability commencing on that date and to disability insurance benefits under section 216(1) and 223, respectively, of Title II of the Social Security Act.
In April, 1997, Avatar obtained a summary judgment against Smith on his claim of employment discrimination under FCRA, based on his representations in his SSD applications that he was unable to work. Citing to numerous cases invoking the doctrine of judicial estoppel, the trial court entered a final summary judgment against Smith. This appeal ensued.
Smith argues that the trial court erred in barring his claim for disability discrimination under the doctrine of judicial estoppel because issues of material fact remain in the FCRA proceeding. He contends that Avatar discriminated against him in violation of his rights under FCRA by failing to provide reasonable accommodations for his disability and by terminating him because of his disability.
To present a prima facie case of employment discrimination based on disability under FCRA, a plaintiff must show 1) that he or she is a person with a disability; 2) that he or she is "qualified" for the position apart from his or her disability; and 3) that he or she was denied the position solely because of his or her disability. See Brand v. Florida Power Corp., 633 So.2d 504 (Fla. 1st DCA 1994). FCRA should be construed in conformity with the American with Disabilities Act (ADA), and its predecessor the Rehabilitation Act. Greene v. Seminole Elec. Co-op., Inc., 701 So.2d 646 (Fla. 5th DCA 1997); Brand at 509 (if Florida statute is modeled after federal law on same subject, Florida statute will take on same construction *1107 as is placed on its federal prototype, insofar as such interpretation is harmonious with spirit and policy of Florida legislation). The ADA provides that a "qualified individual" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job. 42 U.S.C. § 12111(8). If a qualified individual with a disability could perform the essential functions of the job with reasonable accommodation, then the employer is required to provide the accommodation unless doing so would be an undue hardship for the employer. 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodation may include, but is not limited to such ameliorations as: additional unpaid leave, job restructuring, part-time or modified work schedules, or even reassignment to a vacant position. 42 U.S.C. § 12112(9)(B).
The legislature, in enacting FCRA, and Congress in its enactment of the ADA, were silent regarding the relationship of these laws with existing disability legislation under the Social Security Act. In the absence of any guidance, the courts have split over whether the application for or receipt of Social Security Disability (SSD) benefits should stop discharged employees from asserting protection under the ADA.[2] Two cases from the Eleventh Circuit Court of Appeals, and two cases from the U.S. District Courts of Florida, have addressed the subject. See Taylor v. Food World, Inc., 133 F.3d 1419 (11th Cir. 1998); Talavera v. School Board of Palm Beach Co., 129 F.3d 1214 (11th Cir.1997); Thomas v. Fort Myers Housing Authority, 955 F.Supp. 1463 (M.D.Fla.1997), overruled by Talavera v. School Board of Palm Beach Co., 129 F.3d 1214 (11th Cir.1997); Dockery v. North Shore Medical Center, 909 F.Supp. 1550 (S.D.Fla.1995). However, only the Thomas case has been cited by the parties, and that case has been overruled.
Judicial estoppel is an equitable doctrine that is used to prevent litigants from taking totally inconsistent positions in separate judicial, including quasi-judicial, proceedings. The doctrine is "designed to prevent parties from making a mockery of justice by inconsistent pleadings." American Nat. Bank of Jacksonville v. Federal Dep. Ins. Corp., 710 F.2d 1528, 1536 (11th Cir.1983). Stated differently, the doctrine is intended to prevent a litigant from "playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990), cert. denied, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991). In the ADA context, many employers are asserting the defense of judicial estoppel in an attempt to prevent employees who have filed for, or received, social security disability benefits from claiming that they are qualified under the ADA to perform their jobs. In the instant case, Avatar similarly asserts the defense of judicial estoppel in an attempt to prevent Smith, who is receiving social security disability benefits, from claiming that he is qualified under FCRA to work.
The Eleventh Circuit in Talavera determined that a certification of total disability on a disability benefits application is not inherently inconsistent with being "qualified" under the ADA. Id. The rationale is that the Social Security Administration determines whether an individual is entitled to disability benefits; it does not consider whether the individual can work with reasonable accommodation. Id., citing Swanks v. Washington Metro. Area Transit Auth'y, 116 F.3d 582, 585 (D.C.Cir.1997); see also Sumner v. Michelin North America, Inc., 966 F.Supp. 1567, 1574 (M.D.Ala.1997). Under the SSA, a person is entitled to disability benefits if his impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of gainful work which exists in the national economy." "Work which exists in the national economy" means work which exists in significant numbers, either in the region where such individual *1108 lives or in several regions of the country. See Mohamed v. Marriott Intern., Inc., 944 F.Supp. 277, 284 (S.D.N.Y.), order clarified, 1996 WL 741596 (1996). Further, an "interpretative guidance" issued by the Social Security Administration addressing the effect of the ADA on the SSD determination process states:
The fact that an individual may be able to return to a past relevant job, provided that the employer makes the accommodations, is not relevant to the issue(s) to be resolved.... [H]ypothetical inquiries about whether an employer would or could make accommodations that would allow return to a prior job would not be appropriate.
Sumner at 1574. Thus, the Social Security Administration may find that a person is unable to do any work that exists in the national economy even though that person can work with a reasonable accommodation. Id.; see also Equal Employment Opportunity Comm'n, EEOC Enforcement Guidance on Disability Representations, BNA's Daily Labor Rep., Feb. 14, 1997. In those instances the person is both a person with a total disability under the SSA and yet a "qualified individual" under the ADA.
Accordingly, the determination of whether an individual who has certified total disability to the Social Security Administration is judicially estopped from later bringing a claim under the ADA will depend upon the facts of the case, including the specific statements made in the application for disability benefits and other relevant evidence in the record. Taylor at 1422; Talavera at 1220. We conclude that the same standard of case by case review based on the specific facts of each case also applies to claims under FCRA.
The first question is whether Smith has previously asserted to the Social Security Administration that he is totally and permanently disabled. Contrary to Avatar's allegations, there is no record evidence that Smith claimed "total and permanent disability;" the record reflects that he represented that, "I am unable to work," due to a disabling condition. That statement may not be inconsistent with his claim of employment discrimination under FCRA. He also stated several times in his deposition that he really wanted to work, and it is unrefuted, indeed admitted by Avatar, that to this end, Smith inquired on more than one occasion about the availability of light duty work but was informed none was available prior to his termination. After his termination, Smith unsuccessfully applied for numerous other jobs and he believes the lack of success is due to the status of his health. We conclude that Smith's claim that he was disabled under the liberal standards of the Social Security Act may be consistent with his claim for relief under FCRA, and that there exists a genuine issue of material fact as to whether Smith could have worked for Avatar with a reasonable accommodation. Smith's previous statements may be considered in the trial of this matter, but may not be relied upon solely to conclude that he has a total and permanent disability that would preclude him from continuing employment with Avatar under FCRA.
The trial court's order of final summary judgment dismissing Smith's claim of employment discrimination is vacated and we remand for further proceedings.
ORDER VACATED; REMANDED FOR FURTHER PROCEEDINGS.
GRIFFIN, C.J., and THOMPSON, J., concur.
NOTES
[1] We note that our legislature still uses the term "handicap." Many people with disabilities, however, prefer the term "disabled" as they view the term "handicap" as having a derogatory connotation, since literally translated it means "hand in cap," implying the need for handouts or charity. George C. Dolatly, The Future of the Reasonable Accommodation Duty in Employment Practices, 26 Colum. J.L. & Soc. Prob. 523, n.7 (1993). In recognition of this preference at least six states have amended their respective statutes to substitute the term "disability" for "handicap." See Brown v. Scott Paper Worldwide Co., 950 P.2d 953 (Wash.App.1998); Hosaflook v. Consolidation Coal Co., 497 S.E.2d 174 (W.Va. 1997); Indiana Civil Rights Com'n v. Delaware County Circuit Court, 642 N.E.2d 541 (Ind.Ct. App.1994), opinion vacated, 668 N.E.2d 1219 (Ind.1996); Boelman v. Manson State Bank, 522 N.W.2d 73 (Iowa 1994); Cassista v. Community Foods, Inc., 5 Cal.4th 1050, 22 Cal.Rptr.2d 287, 856 P.2d 1143 (1993); City of Austin v. Gifford, 824 S.W.2d 735 (Tex.App.-Austin 1992).
[2] See generally, Marney C. Sims, Note, Estop It! Judicial Estoppel and Its Use In The American with Disabilities Act Litigation, 34 Hous. L.Rev. 843 (1997); Andrea C. Luby, Note, Estopping Enforcement of the Americans With Disabilities Act, 13 J.L. & Pol. 415 (1997); Heather Hamilton, Note, Judicial Estoppel, Social Security Disability Benefits and the ADA: The Circuits Diverge, 9 DePaul Bus. L.J. 127 (1996)