In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4294

Arlie Leonberger,

Plaintiff-Appellant,

v.

Martin Marietta Materials, Inc.,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-CV-4313-JPG--J. Phil Gilbert, Judge.


Argued June 5, 2000--Decided October 26, 2000


   Before Easterbrook, Diane P. Wood, and Evans, Circuit
Judges.

   Diane P. Wood, Circuit Judge.  Arlie Leonberger
suffers from sleep apnea, a serious disorder that
causes a person to stop breathing for brief
periods of time while asleep; the oxygen
deprivation that results disrupts the person's
normal sleep cycle, leaving the individual very
tired and with a tendency to fall asleep during
the day. Beginning in 1967, Leonberger had a job
working in a rock quarry that was eventually
owned by the defendant, Martin Marietta
Materials, Inc. (Martin). Martin became concerned
about Leonberger's tendency to "nod off" on the
job after it received complaints to that effect.
After efforts to obtain medical treatment failed
(for reasons we detail below), Martin fired him.
Leonberger sued under the Americans with
Disabilities Act ("ADA"), 42 U.S.C. sec.sec.
12101 et seq., but the district court granted
summary judgment for Martin. We agree that
Leonberger has not pointed to any triable issue
of fact and is not entitled to judgment. We
therefore affirm.

I

   The principal job Leonberger performed for
Martin was that of "yard load operator," which
required him to operate heavy machinery used to
load trucks with rock and aggregate for shipment.

On occasion, he also performed certain welding duties. His direct supervisor was Bill Austin, who reported to the quarry manager, Mose Frailey.

At some point, Frailey began to observe Leonberger sleeping on the job. Leonberger objected to that characterization of his behavior, claiming instead that he simply chose to "nod off" at times when there was nothing to do because he was waiting for more trucks to arrive. He told Frailey that he could stay awake if he kept busy. It was then that Frailey assigned Leonberger the welding duties, but the experiment was not successful. A co-worker reported to Frailey that Leonberger was sleeping again, this time while on welding duty. Other complaints about Leonberger's sleeping also reached Frailey and Austin.

In addition to his job at Martin, Leonberger ran a small fishing business at which he bought and sold fish. He spent three or four hours a day there. At other times in his life, Leonberger had held jobs such as farming, truck driving, maintenance work, and auto repair.

Concerned about Leonberger's persistent "nodding off," Frailey and Austin went to the fishing store in September 1997 to discuss the situation with him. They suggested that he take a leave of absence so that he could get his sleeping problem treated, and Frailey volunteered to help him find an appropriate doctor. Frailey also informed Leonberger that under Martin's medical leave policy, Leonberger would have up to six months of leave time available to him. Leonberger signed an acknowledgement form, and on September 15, 1997, he filled out a written request to take the leave of absence.

True to his word, Frailey put Leonberger in touch with a Dr. Iyer, who began treating Leonberger's condition. Dr. Iyer told Leonberger that one treatment option involved surgery, but Leonberger refused to consider that. An earlier effort to use some type of machine to assist in his night-time breathing had also failed. Leonberger remained under Dr. Iyer's care, nevertheless. After four months of his leave had gone by, Frailey spoke with him and reminded him that his medical leave would expire in March 1998. Martin sent him a letter on February 2, 1998, that specified March 5, 1998, as the final day for his medical benefits. March 5 came and went, and on March 13, after Leonberger had failed to return to work with a doctor's release, Martin terminated him. Also on March 13, Martin received a note from Dr. Iyer stating that Leonberger had a "significant sleep problem" that had "not improved with treatment," and that the

problem was "interfering with his ability to work."

II

Originally, Leonberger's complaint alleged only that Martin had failed to accommodate his disability, in violation of the ADA. After Martin filed a motion for summary judgment on that theory, the district court granted Leonberger permission to amend his complaint. The amended complaint abandoned the accommodation claim and substituted a claim that Martin had discriminated against him by terminating him because of his disability. He also tried to argue, through his materials on Martin's new summary judgment motion directed to the discrimination claim, that Martin had discriminated against him by "forcing" him to take the medical leave. On appeal he has fleshed out that theory as well. This latter theory seems to be a sort of constructive discharge notion: by compelling Leonberger to go on medical leave, Martin ensured his eventual discharge. (Presumably this theory also entails the claim that Martin knew that the doctor would be unsuccessful at curing the sleep apnea, and thus had simply set Leonberger up for a negative medical note at the end of the leave.)

The parties have sparred over the question whether Leonberger's alternative theory of constructive discharge was properly before the district court and thus properly before us. Martin urges that it is not, while Leonberger points out that it was, if nothing else, litigated by consent because he addressed it fully in his response to the motion for summary judgment, and Martin presented its arguments on this point in its reply. The mere fact that Leonberger had not spelled out this aspect of his termination theory in the pleadings did not preclude him from supporting his discharge theory with this evidence at the summary judgment stage. We therefore consider both aspects of his argument here.

On the merits, the only disputed issue was whether Leonberger could show that he was a qualified individual with a disability, as that concept is defined in 42 U.S.C. sec. 12102(2). Because the parties were proceeding under the burden-shifting method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), this point logically might have been considered at the prima facie case stage, element one of which requires the plaintiff to show that he is in the protected class. Perhaps in an effort to avoid a protracted dispute over the question whether Leonberger's qualifications had to be assessed without considering his sleep

disorder, or perhaps because it was just more straightforward, the district court chose to assume that Leonberger had satisfied the prima facie case and it asked instead whether Leonberger had any evidence to show that Martin's asserted reason for firing him was a pretext.

Martin said that it fired Leonberger because (1) he failed to report to work before the expiration of his medical leave with a doctor's release, and (2) he failed to request an extension of his leave time before the first period expired. Leonberger presented some evidence that might have rebutted the second reason, since there was nothing in the medical benefits plan that indicated that extensions were possible. But he offered nothing to counter the first point, and we frankly find it hard to imagine what he could have said. Looking either at the moment when Martin placed him on the leave of absence or the moment when it fired him, it is undisputed that Leonberger had been observed either "sleeping" or "nodding off" on the job, including while the front loader was in operation. Martin took the position that it did not want to incur the risks posed by having a sleepy employee operate such a large and potentially dangerous piece of equipment. We often say that we do not, and cannot, impose our own ideas of prudent business management on employers; we can assess only the question whether an employer has taken an action for a forbidden reason. See e.g., Robin v. ESPO Eng'g Corp., 200 F.3d 1081, 1091 (7th Cir. 2000). But Martin hardly needs the benefit of that rule, since an employee who is less than fully alert could harm himself and others if he is operating a front loader, or many other kinds of heavy industrial equipment.

We add for the sake of completeness that Leonberger himself testified that he chose to nod off, in an effort to refute the idea that his sleeping disorder was causing him to do so. But it is hard to see how that claim advances his case. Martin had no reason to care why Leonberger was sleeping; it just didn't want people who were groggy for any reason operating its machines. If anything, this tends to reinforce Martin's position that its action was a response to Leonberger's performance of the job and was not a product of discriminatory animus.

The judgment of the district court is Affirmed.