**J. Paul WEST, Plaintiff,**

v.

**TOWN OF JUPITER ISLAND, a municipal corporation, Defendant**

**No. 99–14378–CIV.**

United States District Court, S.D. Florida.

Dec. 28, 2000.

Order on Reconsideration in Part, April 20, 2001.

Louis Paul Pfeffer, Charles Dominic Thomas, Fischer & Pfeffer, Lake Worth, FL, for J. Paul West, plaintiff.

Christine D. Hanley, Sally Ann Still, Christine D. Hanley & Associates, West Palm Beach, FL, for Town of Jupiter Island, defendant.

## ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PAINE, District Judge.

This matter is before the court upon the Defendant's Motion for Summary Judgment, filed on or about November 9, 2000 (D.E.# 27). Upon review of the motion, the response thereto, and the applicable

authority, the court finds that the motion should be granted, in part, as to allegations of wrongful termination, because there exists no issue of material fact that plaintiff was terminated because of alleged impairments. The court additionally finds that the motion should be denied as to allegations of discriminatory harassment.

## PROCEDURAL BACKGROUND

Plaintiff, J. Paul West, has filed this action alleging that Defendant, Town of Jupiter Island, harassed and wrongfully terminated him in violation of both federal and state laws because of disabilities including obesity, sleep apnea, slow learning disability, and dyslexia. In his amended complaint, Mr. West has brought counts for disability harassment and wrongful termination under both the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.10 *et. seq.* Plaintiff originally filed a charge of discrimination with the EEOC on June 19, 1997, and later amended the charge on September 14, 1998. Defendant has filed a Motion for Summary Judgment on Mr. West's claims.

## SUMMARY JUDGMENT STANDARD

The procedure for disposition of a summary judgment motion is well established. According to the Federal Rules of Civil Procedure, summary judgment is authorized only when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56.

The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the nonmovant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### UNDISPUTED FACTS

1. During his primary and secondary education, Plaintiff was diagnosed and/or treated for slow learning disability and dyslexia.

2. Plaintiff later attended Indian River Community College, where he completed basic police officer courses, making Dean's List on two occasions.

3. In approximately January of 1987, Plaintiff was hired as a police officer/firefighter by the Town of Jupiter Island, the defendant in this action.

4. Defendant, the Town, is an island community located in Martin County, Florida. There are two bridges leading to the Town, a northern bridge and a southern bridge. The Town is eight and a half miles long, north to south, and on average one and a half to one quarter mile wide, east to west.

5. As a police officer, Plaintiff was responsible for responding to emergency calls, interviewing witnesses, preparing written reports of findings, patrolling an assigned zone, keeping a daily log of activities, and, when necessary, making arrests. As a firefighter, Plaintiff drove a fire truck and helped suppress fires.

6. Town police officers work twelve-hour shifts. A shift is comprised of two officers and one sergeant. The Town is divided into two zones, north and south. An officer is assigned to a zone and must stay in the assigned zone unless he is providing backup to the other officer.

7. From 1987–1992, Plaintiff was supervised by Sgt. Raymond Lott. In 1992, Sgt. Lott retired, and by 1993 Sgt. Barry Pawlak became Plaintiff's supervisor.

8. Plaintiff's ten year tenure with the Town was terminated in approximately February 1997.

9. At the time of his termination from the Town, Plaintiff weighed approximately 280 pounds with heavy boots and gun belt, and was six feet tall.

10. Plaintiff's medical records indicate that Plaintiff was "overweight—with heavy boots and gun belt on."

11. While employed with the Town, Plaintiff suffered from sleep apnea, causing him to feel sluggish at the end of the day.

12. As recorded in the school records from the Broward County School Board, Plaintiff suffered from slow learning disability and dyslexia while attending public primary and secondary schools.

13. Plaintiff suspected, based on advice from a medical professional, that he may have had Cushing's Disease. Mr. West was never diagnosed with such disease.

14. Plaintiff's supervisor was aware of Plaintiff's weight problem. Between 1993 and 1996, Sgt. Pawlak commented on Plaintiff's performance evaluation that Plaintiff was "thick waisted," and he "needed to take things off of his gun belt and reduce the bulk on his person."

15. Plaintiff does not recall whether he discussed his condition of sleep apnea with Sgt. Pawlak. Sgt. Pawlak was aware, however, that Plaintiff did have a leave of absence for sinus surgery.

16. Plaintiff never told Sgt. Pawlak that he suffered from slow learning disability. Plaintiff did tell Sgt. Pawlak's predecessor, Sgt. Lott, and a Lieutenant Hester that he had slow learning disability and dyslexia.

17. Plaintiff's claims that he was subjected to a hostile work environment on the basis of his physical and/or medical conditions are based on the following allegations:

(A) Sometime between 1993 and January 1996, Sgt. Pawlak called Plaintiff "fat, stupid, and lazy." Plaintiff does not recall whether there were any witnesses to such statement.

(B) Sometime between 1993 and January 1996, Plaintiff claims that he complained to Chief Curry that Sgt. Pawlak referred to Plaintiff as "stupid" and threw things at him.

(C) On April 11, 1996, Chief William G. Curry allegedly telephoned Plaintiff, who was late for a training course, and said "Get your fat ass out of bed."

(D) Sometime between 1987 and January 1996, Plaintiff found an altered article in his work mailbox that featured a story about a 1000 lb. man. West's name had been exchanged in place of the actual newsmaker's name. Plaintiff also found two advertisements for penile surgery in his work mailbox, although he denies suffering from erectile dysfunction.

(E) The performance evaluations of Plaintiff conducted by Sgt. Pawlak beginning periodically from May of 1993 through November 1994 indicate Pawlak's concerns regarding Plaintiff's report writing, handwriting, and physical appearance.

(F) In specific performance evaluations of May 4, 1994, and November 8, 1994, Sgt. Pawlak attributes Plaintiff's problems with spelling, punctuation, neatness, and accuracy were due to "lack of concern and education," citing "schooling as a reason for deficiencies."

(G) Sgt. Pawlak recommended as a result of the performance evaluation of May 4, 1994, that Plaintiff enroll in English and composition courses.

(H) Plaintiff twice attempted to enroll in report writing courses, but both classes were cancelled.

(I) Plaintiff believes that the reason he had difficulty completing reports was because his supervisor watched over him. Plaintiff believed that if he had a different supervisor, he would have done better at report writing.

18. Prior to his termination, Plaintiff had been counseled several times for leaving his assigned work zone without authorization.

19. On November 19, 1996, Plaintiff broke a mirror in his patrol car. Town policy required police officers to immediately report damage to vehicles to their supervisor.

20. Rather than report the damage, Plaintiff left his assigned zone, left the Town, and went to a gas station to purchase glue to repair the mirror.

21. After Plaintiff's attempt to repair the mirror was unsuccessful, he called dispatch and reported that he had just broken the mirror and tried to repair it with glue he had on his person. Plaintiff denied leaving his zone to purchase the glue.

22. On December 10, 1996, the Town conducted an administrative hearing. Present at that hearing were Sgt. Pawlak, Sgt. Zabriskie, and Lt. Hester.

23. The panel at the administrative hearing found Plaintiff lied about the time the incident occurred, lied about when he purchased the glue, and lied when he denied leaving the zone without permission.

24. The panel at the administrative hearing recommended Plaintiff's termination. On December 26, 1996, Police Chief William G. Curry asked the town manager to review and approve

his recommendation. On December 27, 1996, Chief Curry notified Plaintiff he would recommend termination for cause, effective January 3, 1997. Plaintiff had five days to challenge the recommendation.

25. On January 18, 1997, the town manager notified Plaintiff that he would be recommending that the Town Commission terminate Plaintiff. The Town Commission approved and ratified the decision to terminate Plaintiff on February 12, 1997.

## DISCUSSION

■ This action stems both from the Americans with Disabilities Act (ADA), 42 U.S.C. § 101, *et. seq.*, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.10, *et. seq.* In order to establish a prima facie case of discrimination based upon a disability under the ADA, a plaintiff must demonstrate the following three elements:

1. The existence of a disability;

2. Plaintiff's qualification—with or without reasonable accommodation—to perform essential job functions;

3. Adverse employment action against plaintiff *because of* his disability.

*See Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 910 (11th Cir.1996)(emphasis supplied). The elements are the same under the FCRA. *See Smith v. Avatar Properties, Inc.,* 714 So.2d 1103, 1106 (Fla. 5th DCA 1998). Plaintiff bears the burden of proving his prima facie case by a preponderance of the evidence. *See Doe v. Dekalb County School Dist.,* 145 F.3d 1441, 1445 (11th Cir.1998).

In Defendant's Motion for Summary Judgment, defendant alleges, *inter alia* that plaintiff failed to set forth a prima facie case for employment discrimination because plaintiff failed to demonstrate that his alleged impairments are disabilities within the meaning of the ADA, plaintiff

failed to demonstrate he is qualified to perform the job of police officer, and plaintiff failed to demonstrate he was terminated from the Town because of his alleged impairments.

In reviewing the pleadings and depositions on file in the instant case, this court finds that genuine issues of material fact exist as to defendant's allegation regarding whether plaintiff's alleged impairments constitute a disability. Specifically, other courts have found that whether a condition of sleep apnea constitutes a disability under the ADA is a question of fact. *See, e.g., Russo v. Jefferson Parish Water Department,* 1997 WL 695602 (E.D.La.). Further, courts in this circuit have determined that obesity can be found to be an impairment in limited circumstances. *See, e.g., Coleman v. Georgia Power Company,* 81 F.Supp.2d 1365, 1369 (N.D.Ga.2000). Thus, whether plaintiff's conditions of sleep apnea and obesity constitute disabilities protected by the ADA raise questions of fact not to be disposed of by summary judgment in this matter. Further, defendant's allegation that plaintiff failed to demonstrate his qualifications for position of police officer also raises questions of fact.

■ Defendant's allegation that plaintiff failed to demonstrate he was terminated from the Town *because of* his impairments has merit. It is an undisputed fact that plaintiff was terminated because of his untruthfulness regarding the November 19, 1996 broken-mirror incident. Such circumstances do not suggest a discriminatory motive for plaintiff's termination of employment with the Town. *See generally Leonberger v. Martin Marietta Materials, Inc.,* 231 F.3d 396 (finding plaintiff's failure to report to work before the expiration of his medical leave with a doctor's release was a valid, nondiscriminatory reason for termination); *DeFilippo v GMRI, Inc.,* 10

F.Supp.2d 245 (E.D.N.Y.1998) (holding termination for making a derogatory comment in front of a customer and then lying about incident to manager did not give rise to inference of discrimination); *Brohm v. JH Properties, Inc.*, 947 F.Supp. 299 (W.D.Ky, 1996)(granting summary judgment to employer who fired a doctor for sleeping during surgical procedures, not for his sleep apnea). As the *Brohm* court stated:

> [N]o employer is required to ignore the...patently unacceptable behavior of its employees simply because that employee has a disability. An employee may not "boostrap his disease into the line of causation,"...by showing that the misconduct relied on by the employer would not have occurred "but for" the disability. *Brohm v. JH Properties, Inc.*, 947 F.Supp. at 302.

Here, the Town has produced undisputed evidence in support of a legitimate, nondiscriminatory reason in its decision to discharge plaintiff. Plaintiff does not dispute that he lied to his employer regarding the broken mirror and its repair, and acknowledges that his failure to tell the truth resulted in his termination. Thus, plaintiff has not successfully set forth a prima facie case of employment discrimination for wrongful termination based on actual or perceived disabilities. Plaintiff's claims for wrongful termination under both the ADA and FCRA (Counts IV, V, VI, X, XI, and XII) do not raise an issue of fact to survive Defendant's Motion for Summary Judgment. However, since plaintiff has raised genuine issues of material fact regarding defendant's conduct toward plaintiff in the workplace prior to termination, plaintiff's claims for disability harassment remain.

In its motion for summary judgment, the Town also alleges that plaintiff's allegations are untimely, as the alleged harassment occurred more than one year prior to West's filing of an administrative claim of discrimination. In response, plaintiff alleges a continuing violation theory of harassment, which would entitle plaintiff an extension of the time limitation in discrimination actions. In order for this court to properly determine whether the continuing violation exception applies, the court should consider whether the allegations of harassment are related in subject matter, frequency, and permanence. *See Roberts v. Gadsden Memorial Hospital,* 835 F.2d 793, 800 (11th Cir.1988). This analysis raises questions of fact in the instant case that preclude entry of summary judgment on this basis.

In light of the foregoing, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED as to all claims regarding wrongful termination under both the ADA and the FCRA [counts IV, V, VI, X, XI, and XII of Plaintiff's Second Amended Complaint (D.E.# 19) ]. It is further

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is DENIED as to all other claims of discriminatory harassment under both the ADA and FCRA.

## *OMNIBUS ORDER GRANTING DEFENDANT'S EMERGENCY MOTION FOR RECONSIDERATION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL*

This matter is before the court upon the following motions:

1. Defendant's Emergency Motion for Reconsideration of Defendant's Motion for Summary Judgment, filed on or about January 3, 2001 (D.E.# 55);

2. Plaintiff's Motion for Voluntary Dismissal, filed on April 17, 2001 (D.E.# 76);

3. Defendant's Motion for Order Granting Summary Judgment, filed on April 18, 2001 (D.E.# ___).

Upon review of the motions, the court's order granting in part Defendant's Motion for Summary Judgment (D.E.# 51), and the applicable authority, the court finds that the motions for reconsideration and summary judgment should be granted, and the motion for voluntary dismissal should be denied.

### DISCUSSION

This action stems both from the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.,* and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.10, *et. seq.* In order to establish a prima facie case of discrimination based upon a disability under the ADA, a plaintiff must demonstrate the following three elements:

1. The existence of a disability;

2. Plaintiff's qualification—with or without reasonable accommodation—to perform essential job functions;

3. Adverse employment action against plaintiff *because of* his disability.

*See Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 910 (11th Cir.1996)(emphasis supplied). The elements are the same under the FCRA. *See Smith v. Avatar Properties, Inc.,* 714 So.2d 1103, 1106 (Fla. 5th DCA 1998). Plaintiff bears the burden of proving his prima facie case by a preponderance of the evidence. *See Doe v. Dekalb County School Dist.,* 145 F.3d 1441, 1445 (11th Cir.1998).

In the court's order of December 28, 2000, granting in part Defendant's Motion for Summary Judgment, the court determined that summary judgment was appropriate for all claims regarding wrongful termination under both the ADA and FCRA due to plaintiff's failure to demonstrate adverse employment action *because*

*of* a disability. This same order denied Defendant's Motion for Summary Judgment as to all other claims of discriminatory harassment under both the ADA and FCRA. Defendant now contends sleep apnea is irrelevant to plaintiff's claims of discriminatory harassment, and that plaintiff failed to set forth a prima facie case for discriminatory harassment by failing to provide information regarding the general population.

This court, in its order dated March 15, 2001 (D.E.# 73), required plaintiff to provide comparative evidence of how his alleged impairments restrict the performance of a major life activity compared to the average person in the general population. Failing to do so, plaintiff now moves for voluntary dismissal, while defendant contends this court should grant summary judgment, award attorneys' fees pursuant to statute, and award costs to defendant.

### I. Sleep Apnea

In reviewing Plaintiff's Second Amended Complaint (D.E.# 19), this court finds that plaintiff has not asserted any claims for disability harassment based on plaintiff's alleged condition of sleep apnea. Further, in reviewing the undisputed facts of the case, this court finds there to be no alleged incidents of discriminatory harassment based on plaintiff's alleged condition of sleep apnea. As such, plaintiff's assertions regarding his condition of sleep apnea are irrelevant to the determination of the remaining discriminatory harassment claims.

### II. Plaintiff's Prima Facie Case

■ In crafting a prima facie case under the ADA, a claimant must first demonstrate he has a disability. *See, e.g., Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 910 (11th Cir.1996). A person has a disability under any one of the fol-

lowing three theories: (1) claimant has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) claimant has "a record of such impairment", or (3) claimant is "regarded as having such an impairment." *42 U.S.C. § 12102(2)* (1995). Inherent in all three theories is an actual or perceived impairment that "substantially limits one or more of the major life activities of such individual." In the instant case, plaintiff alleges several possible disabilities: slow learning disability and dyslexia (hereinafter "learning disabilities"), obesity, and sleep apnea.[1]

Recently, the Eleventh Circuit clarified the burden of an ADA plaintiff in asserting a disability that substantially limits one or more of the major life activities of such individual. *Maynard v. Pneumatic Products Corp.*, 233 F.3d 1344 (11th Cir.2000). The *Maynard* court held:

> A trier of fact may be the appropriate party to determine whether an ADA claimant is significantly restricted in the performance of a major life activity.... However, the claimant must present sufficient evidence of the significant restriction before the court may turn the issue over to the trier of fact. **This evidence must include information regarding the abilities of the average person in the general population.** *Id.* at 1349 (emphasis supplied).

Thus, in order to demonstrate the existence of a disability, an ADA plaintiff must present "some evidence of how well the average person in the general population performs the major life activity in question." *Id.* at 1350. Here, the plaintiff

failed to provide any evidence whatsoever of how well the general population performs any major life activities in questions with respect to either his claims for learning disabilities or obesity.[2] As such, in light of the Eleventh Circuit's position in *Maynard*, the plaintiff cannot successfully assert claims under the ADA for these alleged disabilities.

### III. Plaintiff's Request for Voluntary Dismissal

 As noted in plaintiff's Motion for Voluntary Dismissal, courts have discretion in determining whether to grant or deny such a motion. *See e.g., San Marco v. City of St. Petersburg*, 185 F.R.D. 679 (M.D.Fla.1999). Courts generally should not deny a motion for voluntary dismissal unless there is substantial prejudice to the defendant. *Id.* In this particular case, plaintiff filed suit in the circuit court in August 1999, and the case was removed to this court in December 1999. Since December 1999, the case has been actively litigated, and partially disposed of by this court's previous order granting, in part, defendant's motion for summary judgment. It is clear to the court that plaintiff has initiated and sustained an action that can no longer be supported in light of the recently clarified requirements enunciated in *Maynard*. Since this action affords litigants the opportunity to recover attorneys' fees, this court feels the defendant would be substantially prejudiced by the entry of a voluntary dismissal this late in the game. Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Emergency Motion for Reconsid-

---

1. As discussed in the previous section of this order, sleep apnea is not relevant to the surviving claims for discriminatory harassment, and will, therefore, not be addressed in this analysis.

2. It should be noted that Plaintiff does not clearly specify the life activities that are substantially limited by the alleged learning disabilities and obesity. For the purposes of this analysis, the court surmises that Plaintiff considered learning and sleeping to be affected by such alleged disabilities.

eration of Defendant's Motion for Summary Judgment (D.E.# 55) is GRANTED. It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Voluntary Dismissal (D.E.# 76) is DENIED. It is further

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (D.E.# __) is GRANTED. Within ten (10) days of the date of this order, Defendant must file an affidavit reflecting the reasonable attorneys' fees and costs incurred in the defense of this action. The court will enter an appropriate award upon receipt of such affidavit. It is further

ORDERED AND ADJUDGED that this case is CLOSED. All pending motions not otherwise ruled upon are hereby dismissed as moot.