United States Court of Appeals,

Eleventh Circuit.

No. 97-6017.

Patricia TAYLOR, as guardian of Gary Taylor, a minor, Plaintiff-Appellant,

v.

FOOD WORLD, INC., Brunos, Inc., Defendants-Appellees.

Jan. 28, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-95-H-2384-NE), James Hughes Hancock, Senior District Judge.

Before COX and BARKETT, Circuit Judges, and HUNT[*], District Judge.

COX, Circuit Judge:

I. BACKGROUND

Patricia Taylor, as guardian of Gary Taylor, who was a minor at the time this action was commenced, appeals the district court's order granting summary judgment in favor of Food World, Inc. and Bruno's, Inc. ("Food World") on the claim that Gary was terminated in violation of his rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*. We reverse and remand.

Gary suffers from Asperger's disorder, a form of autism involving pervasive developmental disorders. As a result of this condition, Gary often speaks more loudly than necessary and engages in "echolalia," or constant repetitive speech. Gary is unable to control these behaviors. Additionally, Gary's communication and social interaction skills are impaired, as are certain living and survival skills. For example, Gary tends to make inappropriate comments or ask personal

---

[*]Honorable Willis B. Hunt, Jr., U.S. District Judge for the Northern District of Georgia, sitting by designation.

questions of strangers.

Gary began working as a utility clerk for Food World on June 20, 1994. As a utility clerk, his main duties included bagging groceries and assisting customers in delivering the groceries to their automobiles. In performing his duties, customers and co-workers observed Gary speaking loudly and sometimes asking customers personal questions. Three customers complained or made negative remarks to the management about Gary's behavior. Others commented favorably on Gary's attempt to work despite his disability. On September 13, 1994, the store manager terminated Gary. The manager told Mrs. Taylor that the decision to terminate Gary was based on customer complaints that Gary was loud, overly friendly, and overly talkative.

Following Gary's termination, Mrs. Taylor filed an application on Gary's behalf for Supplemental Security Income (SSI) benefits. In the application, Mrs. Taylor affirmed that Gary was disabled and had been since birth. The Social Security Administration determined that Gary was disabled, as Gary's impairment was a "listed impairment" under the regulations, meaning that Gary's impairment meets or equals one of the presumptively disabling impairments listed in the regulations.[1] The Social Security Administration therefore awarded Gary SSI disability benefits.

---

[1]The SSA has developed a five-step procedure for evaluating disability claims, which is as follows:

> (1) The SSA determines whether the claimant is engaged in "substantial gainful activity." If so, the claim is denied; if not, the SSA proceeds to step two.
>
> (2) The SSA determines whether the claimant has a severe impairment, one that significantly limits the ability to do basic work activities. If not, the claim is denied. If so, the SSA proceeds to step three.
>
> (3) The SSA determines whether the claimant has an impairment that meets or equals the presumptively disabling impairments listed in the regulations. If so, the claimant is awarded benefits without further inquiry. If not, the SSA proceeds to step four.

II. PROCEDURAL HISTORY

Mrs. Taylor, as guardian of Gary, sued Food World, alleging that Food World discriminated against Gary in violation of his rights under the ADA. The district court granted Food World's motion for summary judgment and denied Gary's motion for partial summary judgment, holding that: (1) Gary was judicially estopped from contending that he could perform his past job because he subsequently applied for and received SSI disability benefits; (2) the undisputed facts indicated that Gary could not perform his essential job functions and therefore was not an "otherwise qualified individual" under the ADA; and (3) Gary was not entitled to partial summary judgment because as a matter of law, Gary's proposed accommodation was not reasonable.

On appeal, Gary contends that the district court erred in (1) finding that he was judicially estopped from asserting that he was an otherwise qualified individual; (2) holding that there existed no genuine issue of material fact as to whether Gary could perform the essential functions of his job with or without reasonable accommodation; (3) holding that there was no genuine issue of material fact as to whether a reasonable accommodation existed; (4) excluding admissible evidence submitted by Gary; and (5) considering evidentiary submissions that would not be admissible at trial.

---

(4) The SSA determines whether the claimant is able to perform his past work. If so, the claim is denied. If not, the SSA proceeds to step five.

(5) The SSA determines, based upon the claimant's age, educational experience, past work experience, and residual functional capacity, whether the claimant can perform "other work" that exists "in significant number in the national economy." If so, the claim is denied. If not, the SSA awards benefits.

20 C.F.R. §§ 404.1520, 1560(c) (1996).

Because Gary's impairment met or equaled a "listed" impairment, he was awarded benefits at step three.

III. STANDARDS OF REVIEW

We review *de novo* the district court's decision to grant Food World's motion for summary judgment and to deny Gary's motion for partial summary judgment. *See, e.g., Tinney v. Shores,* 77 F.3d 378, 380 (11th Cir.1996). We review the district court's application of judicial estoppel for abuse of discretion. *See Talavera v. School Board of Palm Beach Co.,* 129 F.3d 1214 (11th Cir.1997) (quoting *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257, 1261 (11th Cir.1988) (" "We think it proper simply to review the bankruptcy court's application of judicial estoppel to ascertain whether it was consonant with the policy interests which originally gave rise to the doctrine.' ")). We review the district court's evidentiary rulings for abuse of discretion. *See Judd v. Rodman,* 105 F.3d 1339, 1341 (11th Cir.1997); *United States v. Orr,* 825 F.2d 1537, 1543 (11th Cir.1987).

IV. DISCUSSION

Gary claims that Food World discriminated against him in violation of his rights under the ADA by failing to provide reasonable accommodations for his disability and by terminating him because of his disability. To prevail on a claim under the ADA, Gary must show (1) that he has a disability; (2) that he is "qualified" to be a utility clerk; and (3) that Food World discriminated against him on the basis of his disability. *See Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1132 (11th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *see also* 42 U.S.C. § 12102(2). A "qualified" individual for purposes of the ADA is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). If a qualified individual with a disability could perform the essential functions of the job with reasonable accommodation, then the employer is required to provide the accommodation unless doing so would be an undue hardship for the employer. *See* 42 U.S.C. § 12112(b)(5)(A).

The first element of Gary's ADA claim is not at issue. Food World does not contest that Gary has a "disability" as defined by the ADA. Rather, Food World argues that there is no genuine issue of fact as to whether Gary is "qualified." The district court ruled that no genuine issue of material fact existed as to whether Gary is qualified, basing its decision on alternative grounds. First, the court held that Gary is judicially estopped from claiming that he is qualified because he applied for and received SSI disability benefits. As an alternative basis for its holding, the court held that as a matter of law, Gary's on-the-job behavior rendered him unqualified for the position of utility clerk.

*A. JUDICIAL ESTOPPEL*

The first issue we address is whether the district court abused its discretion in applying the doctrine of judicial estoppel. Judicial estoppel "is applied to the calculated assertion of divergent sworn positions ... [and] is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *McKinnon v. Blue Cross & Blue Shield of Ala.,* 935 F.2d 1187, 1192 (11th Cir.1991) (citation omitted). The district court reasoned that implicit in both the application for SSI benefits and the SSA's determination that Gary is eligible for benefits is the fact that Gary could not perform his job as a utility clerk or any other work. Further, the district court was not persuaded that the fact Gary was deemed disabled because his condition met or equaled a listed impairment compelled a different result. Therefore, because the district court found that Gary's representation to the SSA was clearly contradictory to his position in this action, it ruled that Gary was judicially estopped from asserting that he is qualified.

Recently, this court addressed the issue of whether a plaintiff who applies for and receives disability benefits is *per se* judicially estopped from later bringing a claim under the ADA. *See Talavera v. School Board of Palm Beach Co.,* No. 96-4756 (11th Cir. Nov.24, 1997). After an

extensive discussion of the holdings of other courts of appeals presented with this question, this court determined that a certification of total disability on a disability benefits application is not inherently inconsistent with being "qualified" under the ADA. *See id.* This court reasoned that the SSA, in determining whether an individual is entitled to disability benefits, does not take account of the effect of reasonable accommodation on an individual's ability to work. *Id.; accord Swanks v. Washington Metro. Area Transit Auth'y,* 116 F.3d 582, 585 (D.C.Cir.1997). Accordingly, the determination of whether an individual who has certified total disability to the SSA is judicially estopped from later bringing a claim under the ADA will depend upon the specific statements made in the application and other relevant evidence in the record. *See id.*

After examining the record in this case, we conclude that Gary is not judicially estopped from asserting the claims in question.[2] The medical records Gary submitted to the SSA do not clearly contradict his assertion that he is "qualified" under the ADA. For example, Gary submitted a Behavioral Assessment conducted by a licensed psychologist. The psychologist recommended that Gary and his family seek "support employment with the assistance of a job coach" but also suggested that "Gary and his family should explore additional social outlets and opportunities." (R.2-29). Further, in a discharge summary from Vanderbilt hospital, the attending physician, while suggesting as a possible option a "sheltered work shop with a group home placement," also stated:

> educational and occupational planning for Gary will need to take into consideration is [sic] particular pattern of strengths and deficits, especially as they relate to major difficulties with

---

[2]Because the district court applied a *per se* rule, it did not reach the question of whether, under the facts and circumstances of this case, Gary is judicially estopped from asserting that he is "qualified" under the ADA. However, the parties have briefed this issue, and judicial economy counsels in favor of our addressing it. *See Lopez v. First Union Nat'l Bank of Fl.,* 129 F.3d 1186, 1189 n. 1 (11th Cir.1997); *see also Roofing & Sheet Metal Serv. v. La Quinta Motor Inns,* 689 F.2d 982, 989 (11th Cir.1982) ("The decision whether to consider an argument first made on appeal ... is left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.") (citations omitted).

nonverbal processing and behavioral flexibility. *He needs more time than most in adapting to novel situations, but otherwise such [sic] strive [sic] in situations that are familiar, repetitive, and fairly straight forward in nature. Even visual—motor tasks of the relatively uncomplicated nature can be performed reasonably well by him provided that he is able to develop sufficient familiarity with these.*

(R.2-29) (emphasis added). Mrs. Taylor, in responding to a questionnaire for the SSA, stated that Gary needs supervision, structure, and routine, but did not affirmatively state that Gary was unable to perform his job at Food World. (R.2-29). Although both Mrs. Taylor and Gary stated that he had "fits" or "tantrums," there is no evidence that he had any of these "fits" or "tantrums" while at work. Therefore, the record as a whole indicates that judicial estoppel is not warranted in this case.

*B. OTHERWISE QUALIFIED INDIVIDUAL*

The second issue we address is whether the district court erred in granting summary judgment in favor of Food World on the ground that Gary was not an "otherwise qualified individual." Summary judgment may be granted only when there are no genuine issues of material fact and judgment is appropriate as a matter of law. Fed.R.Civ.P. 56(c). In evaluating the motion for summary judgment, we must consider "all the evidence in the light most favorable to the non-moving party." *Wouters v. Martin County, Florida,* 9 F.3d 924, 929 (11th Cir.1993).

The district court ruled that as a matter of law, Gary's on-the-job behavior rendered him unqualified for the position of utility clerk. It is undisputed that Gary often spoke loudly and asked customers questions. It is also undisputed that Gary could perform what Lawrence Jones, the store manager, described as the duties of a utility clerk—sacking, cleaning, and assisting customers in getting groceries to their cars. Food World argues, however, that because both sacking and assisting customers to their cars require customer contact, that interacting appropriately with customers is also an "essential job function." Indeed, it seems to us that inherent in the job of utility clerk is the ability to carry out the tasks of the job without offending customers. The question, then, is whether as a

matter of law, Gary could not, with or without reasonable accommodation, perform the duties of utility clerk without offending customers.

Jones testified that one customer contacted him directly to complain about Gary. (R.4-31-Ex.a at 98-99). He also testified that manager Jeff Robertson reported that a customer asked if Gary was on drugs or drunk and that manager Ben Spivey reported that a customer asked if Gary was on drugs. (R.4-31-Ex.a at 88-89). Jones testified that manager Margaret Smith "may have" come to him with complaints (R.4-31-Ex.a at 92). When asked further questions about Ms. Smith, Jones stated that she complained to him several times about Gary being loud and making comments to customers, but he could not remember the substance of any specific complaint, and he did not testify that Ms. Smith's complaints to him were based on any customer complaints to her. In fact, Ms. Smith testified that no customers complained directly to her. (R.4-31-Ex.b at 17). Jones also testified that he received customer complaints about other employees "all the time," (R.4-31-Ex.a at 101), and that he would not terminate a person solely because a customer complained; only if the customer complained on several occasions would it constitute a reason to terminate an employee. (R.4-31-Ex.a at 104).

Manager Connie Case testified that she was unaware of any complaints from customers about Gary's behavior. (R.4-31-Ex.k at 10). Manager Jeff Robertson testified that other than the one customer who indicated to Robertson that he thought Gary was drinking, he was aware of no other problems or complaints with Gary's job performance. (R.4-31-Ex.f at 17). Cashier Peggy Birmingham, who worked frequently with Gary, testified that she never saw a customer take offense at any of Gary's remarks and that she never heard him say anything offensive. (R.4-31-Ex.d at 15-16). She also testified that Gary was friendly and cheerful and welcomed the customers to Food World. (R.4-31-Ex.d at 23). Employee Dudley testified that no customers complained to her about

Gary. (R.4-31-Ex.i at 8-9). Employee Rutledge testified that she received no complaints and that Gary caused no disruptions. (R.4-31-Ex.q at 7-9). Employee Jenkins testified that she never saw Gary engage in behavior she considered inappropriate. (R.4-31-Ex.h at 11). Bobbi Evans, another cashier who worked with Gary, testified that she never saw Gary do anything that would be considered offensive and that she never heard customers complain about Gary's conduct. (R.4-31-Ex.kk).

Gary testified that he inquired as to whether couples were married and as to the ages and names of customers' children. He testified that he once told a customer that she needed to buy more groceries because she was too skinny and that he asked a customer if there was anything wrong with his toilet. (R.3-30 at 29-33). Peggy Birmingham stated that Gary asked customers who frequented the store how their children were doing if their children were not with them. (R.4-31-Ex.d at 15, 26).

We do not think that the record shows, as a matter of law, that Gary could not carry out the tasks of his job without offending customers. One customer complained to Jones about Gary's behavior and two customers commented that Gary appeared to be drunk or on drugs, but did not comment that he was performing his job poorly or that Gary had said anything offensive. Other managers and many employees testified that they received no complaints and observed no inappropriate behavior. Although Gary did ask customers questions, there is an issue of fact as to whether these questions were offensive or inappropriate. Because a genuine issue of material fact exists as to whether Gary was "qualified," summary judgment on this ground is precluded.

Gary raises one other issue which we address briefly. The issue is whether the district court erred in denying Gary's motion for partial summary judgment on the grounds that Food World failed to investigate any possibility of a reasonable accommodation. The district court, in denying Gary's

motion, held that Gary's proposed accommodation of reassignment was not reasonable as a matter of law. We conclude that the district court did not err in denying Gary's motion for summary judgment. On remand, the burden will be on Gary to show that he is "qualified." A "qualified" individual is one who can perform the job "with or without accommodation" 42 U.S.C. § 12111(8). Thus, if Gary asserts that a particular reasonable accommodation would have enabled him to perform his essential job functions, then the burden is on Gary to prove the existence and reasonableness of such accommodation. *See Willis v. Conopco,* 108 F.3d 282 (11th Cir.1997). We need not address the other issues raised by Gary in light of our disposition in this case.

V. CONCLUSION

We conclude that Gary is not judicially estopped from bringing an action under the ADA. Moreover, the record indicates that issues of fact remain as to whether Gary was "qualified" to be a utility clerk. We therefore reverse the district court's grant of summary judgment and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.