Charles R. RAY, III Plaintiff,

v.

**THE KROGER CO. Defendant.**

No. CV 402–019.

United States District Court,
S.D. Georgia,
Savannah Division.

May 27, 2003.

Michael L. Edwards, Savannah, GA, for Plaintiff or Petitioner.

John G. Skinner/John K. Andreson, Atlanta, GA, for Defendant or Respondent.

### ORDER

NANGLE, District Judge.

Plaintiff, who suffers from Tourette's Syndrome, alleges that Kroger terminated his employment in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq., (the "ADA"). Before the Court is defendant Kroger's motion for summary judgment (Doc. 18). For the reasons stated herein, such motion (Doc. 18) is hereby GRANTED.

### SUMMARY JUDGMENT STANDARD

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." FED. R. CIV. P. 56 advisory committee's note, *cited in Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the non-movant. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir.1997), *cert. denied sub nom. Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998) (citing *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Metro. Multi–List, Inc.*, 934 F.2d 1566, 1583 n. 16 (11th Cir. 1991), *cert. denied*, 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). Such a showing shifts to the non-moving party the burden "to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed R. Civ. P. 56(e)); *Thompson*, 934 F.2d at 1583 n. 16. A non-movant does not create a genuine issue of material fact by relying on "conclusory allegations based on mere subjective beliefs." *Plaisance v. Travelers Ins. Co.*, 880 F.Supp. 798, 804 (N.D.Ga.1994), *aff'd*, 56 F.3d 1391 (11th Cir.1995) (citing *Carter*, 870 F.2d at 585). Further, a "mere scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### ANALYSIS

**I. Background**

Making all permissible inferences in plaintiff's favor, the background of this case is as follows:

Plaintiff Charles Ray ("Ray") was employed by Kroger from May 28, 2000 until on or about June 18, 2001, as a clerk in the frozen food section. Ray's duties included but were not limited to removing frozen food items from storage freezers in the rear of the store, placing those items on a cart, pushing the cart to the frozen food freezers on the sales floor and stocking the frozen food display cases. Ray's job as a clerk required customer service and contact with customers, employees and, on occasion, vendors and independent contractors. There is no position at Kroger[1] for which Ray was qualified which does not require such contact.

Ray suffers from Tourette's Syndrome. Kroger was aware of this when it hired him. Ray's symptoms include twitching of the feet and arms, intermittent vocal tics and coprolalia, the blurting out of profanity, vulgar language and racial slurs. Ray suffers from these symptoms throughout the day, every day. When Ray is about to make an offensive outburst, he is aware that an outburst is imminent. There is nothing Ray can do, however, to prevent such an outburst. Ray has been advised by his doctor to go ahead and "let out" any outburst that is coming on. When Ray experienced an outburst at work, he would show nearby customers an "information card" explaining what Tourette's Syndrome is.

In November of 2000, Ray directed a racial slur at a Kroger employee and was counseled by his store manager, James Bacon ("Bacon"). At that time, Bacon counseled Ray that he needed to "hold back." Ray requested as an accommodation that everyone at Kroger understand that his outbursts are caused by Tourette's Syndrome. Following his first counseling session, Ray additionally requested that he be transferred to the night shift, so that there would be less people in the store when he was working. Kroger granted Ray's request to be transferred to the night shift.

The hours of the night shift are 11:00 p.m. to 7:00 a.m. Kroger's sales records show that, on average, one hundred sales are made between those hours. Accordingly, approximately one hundred customers, on average, are in the store during the night shift. On the night shift, Ray would have contact with Kroger customers, five to seven co-workers, contractors hired by Kroger to clean the floors and, occasionally, the sidewalks outside the store.

Some time after being transferred to the night shift, Ray was counseled again after making an outburst in front of a Kroger customer. Ray has no specific recollection as to what he said in front of the customer, but the customer complained and Bacon counseled Ray. Following this incident, Ray did not request any additional accommodation.

In June of 2001, Ray blurted out the "N word" in the presence of an African American pressure-washer who contracted with Kroger. The contractor became irate over the use of this racial slur, and complained. The next day, Ray was suspended pending investigation.[2]

Ray is able to fish, play golf and play baseball. Although Ray has a driver's license, he chooses not to drive. Ray is able to take care of his basic daily needs, such as showering, shaving and dressing himself. Ray can cook for himself, but he must exercise caution around flames and electric heat. For this reason, he uses a microwave when he cooks. Ray is unable to work around heavy machinery or sharp objects, or in high places. Ray felt that he could physically do everything that was

---

1. Store "609," the store at which Ray worked.

2. Apparently Ray was discharged and did not return to work.

asked of him while at Kroger. Ray's doctor has advised Ray to "live his life like anybody else."

## II. Prima Facie Case of Discrimination

To make a prima facie case of discrimination under the ADA, Ray must show that he is disabled, that he is otherwise qualified to perform the essential functions of the job, and that he was discriminated against based upon his disability. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir.2002). In order to meet the definition of disabled, Ray must show that he is substantially limited in a major life activity as a result of a physical or mental impairment. 42 U.S.C. § 12102(2). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

## III. Analysis

Kroger has moved for summary judgment on the grounds that Ray cannot make out a prima facie case of discrimination because Ray is not disabled or, alternatively, even if he can be considered disabled, Ray's repeated use of racial slurs renders him unqualified to perform his job. In response, Ray argues that he is disabled because he is substantially limited by his Tourette's Syndrome in the major life activities of cooking, driving, working and communicating with others over an extended period of time. He further argues that he was otherwise qualified to perform his job, and was terminated on the basis of his disability.

### A. Disability

#### 1. Cooking

■ For the sake of this summary judgment Order, the Court will assume without deciding that cooking is a major life activity. Even so, however, Ray cannot make out a prima facie case of discrimination based on his cooking claim. First, it is undisputed that Ray can cook for himself. Because he must exercise caution around flames and electric heat, he chooses to cook by using a microwave. The Court thus finds that Ray is not substantially limited in the activity of cooking. Under the relevant ADA regulation, an individual faces a "substantial limitation" when he is: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1). Comparing Ray to the "general population," the Court does not consider choosing to cook only with a microwave to be a substantial limitation on cooking.

Even assuming that Ray were substantially limited in his ability to cook, however, Ray has presented no evidence that Kroger discriminated against him on the basis of such limitation. Ray thus fails to make out a prima facie case of discrimination on his cooking claim. *See Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1228 (11th Cir.1999) (plaintiff failed to make out prima facie case of discrimination based on restrictions on her ability to lift heavy objects when there was "no evidence in the record [to support] her argument that she was subjected to unlawful discriminatory conduct by [defendant] because of a lifting disability.").

#### 2. Driving

■ It is undisputed that Ray has a Georgia driver's license and is able to drive, but generally chooses not to. Ray

testified at deposition, however, that after he switched to the night shift, he would drive himself from his home to work, a distance of approximately half a mile. *See* Ray Dep. at pp. 36–37. The Court therefore finds that Ray is not substantially limited in his ability to drive. Even if he were so limited, however, he cannot demonstrate that he is limited in a "major life activity" pursuant to the ADA. *See Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329–30 (11th Cir.2001) (driving is not a major life activity).

### 3. Communicating with others over extended period of time

■ This Court joins other courts in finding that "communicating with others" is a major life activity. *See Downing v. United Parcel Serv.*, 215 F.Supp.2d 1303, 1309 (M.D.Fla.2002) ("Plaintiff's hearing loss does limit one or more major life activities such as talking, hearing, and communicating with others"); *Purcell v. Pa. Dep't of Corr.*, 1998 WL 10236 *8 (E.D.Pa. Jan.9, 1998) (the "ability to communicate with others for extended periods of time is a major life activity"); *see also Soileau v. Guilford of Me., Inc.*, 105 F.3d 12, 15 (1st Cir.1997) (noting that the "ability to get along with others" was too vague to be a major life activity, but acknowledging that "a more narrowly defined concept going to essential attributes of human communication could, in a particular setting, be understood to be a major life activity."). The Court further finds that Ray is substantially limited in his major life activity of communicating with others over an extended period of time due to his uncontrollable daily outbursts of vocal tics, including profanity, vulgar words and racial slurs. It appears that Ray's involuntary outbursts render him significantly restricted as to the condition, manner or duration under which he can communicate with others over an extended period of time when compared to the average person

in the general population. *See* 29 C.F.R. § 1630.2(j)(1).

### 4. Working

■ Because he has testified that he could physically do everything that was asked of him while working at Kroger, Ray has defeated his claim that he is substantially limited in the major life activity of working. *See Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir.2000) (affirming lower court's determination that employee who suffered from chronic fatigue syndrome but testified that she was able to perform her job and always got her work done was not disabled in the major life activity of working). Alternatively, the Court need not decide this issue as it already has found that Ray is substantially limited in the major life activity of communicating with others over extended periods of time. *See* 29 C.F.R. Pt. § 1630, App. § 1630.2(j) (1998) ("If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.").

### B. Otherwise qualified

■ To make out a prima facie case of disability discrimination, Ray must establish not only that he is disabled, but also that he is a qualified individual and that he was subjected to unlawful discrimination because of his disability. *Lowe v. Ala. Power Co.*, 244 F.3d 1305, 1307 (11th Cir. 2001). Because the Court has determined that Ray is disabled in the major life activity of communicating with others over extended periods of time, it now considers whether Ray was otherwise qualified to perform his job. A "qualified" individual

for the purpose of the ADA is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions are "the fundamental job duties of the employment position the [disabled employee] holds or desires." 29 C.F.R. § 1630.2(n)(1).

■ Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case by case basis. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir.2001). An employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir.2000). An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job. *Id.*

■ Kroger argues that summary judgment is appropriate because Ray's daily outbursts of curse words and racial slurs rendered him unqualified for his job. In support of its argument, Kroger has directed this Court to the nonbinding authority of *Petzold v. Borman's, Inc.*, 241 Mich.App. 707, 617 N.W.2d 394 (Mich.App. 2000). In *Petzold*, a grocery store bagger who suffered from Tourette's Syndrome and coprolalia sued his employer for having terminated his employment in violation of the Michigan Persons with Disabilities Civil Rights Act. It was undisputed in *Petzold* that the plaintiff's job included "bagging groceries for customers at the checkout counter, retrieving shopping carts from the parking lot, changing the bags in the bottle-return machines, and sometimes assisting elderly customers by taking their groceries to their cars," i.e., his job "placed him in continual contact with customers

and other employees." *Id.*, 241 Mich.App. 707, 710, 617 N.W.2d 394, 396. Moreover, the courteous and proper treatment of customers and co-workers was identified as an essential job function. *Id.*, 241 Mich. App. at 712, 617 N.W.2d at 397. The plaintiff was terminated following a customer's complaints regarding plaintiff's use of the "F" word and the "N" word. *Id.*

In *Petzold*, the appellate court reversed the lower court's denial of summary judgment to the defendant, holding as follows:

Plaintiff's offensive language, which he admitted using on a daily basis in the presence of customers, children, and other employees, made him unfit for his job as a bagger as a matter of law. In reaching this holding, we emphasize that there certainly are jobs that persons with [Tourette's Syndrome] and coprolalia could perform. However, plaintiff's coprolalia renders him completely unqualified to perform this particular job, which required continual contact with members of the general public.

241 Mich.App. 707, 714, 617 N.W.2d 394, 398. In the present case, Ray's job at Kroger placed him into nightly contact with customers, co-workers and independent contractors, and there was no job for which he was qualified which would not require such contact. Like the court in *Petzold*, this Court finds that because of such contact, Ray's coprolalia rendered him unqualified to perform his job.

In determining that Ray was not qualified to perform his job as a clerk, the Court finds instructive *Taylor v. Food World, Inc.*, 133 F.3d 1419 (11th Cir.1998). In *Taylor*, an autistic grocery clerk spoke loudly, engaged in constant repetitive speech, made inappropriate comments and asked personal questions of strangers. *Taylor*, 133 F.3d at 1421. After three customers complained, the plaintiff was

terminated. He then brought a disability claim against his former employer. *Id.* In moving for summary judgment, the defendant argued that because the plaintiff's job involved customer contact, an essential job function was "interacting appropriately with customers." *Id.* at 1424. In considering this argument, the Eleventh Circuit stated that because interacting with customers without offending them was inherent in the job of utility clerk, the relevant question became "whether as a matter of law, [the plaintiff] could not, with or without reasonable accommodation, perform the duties of utility clerk without offending customers." *Id.* Finding that questions of material fact existed with respect to whether the plaintiff could in fact perform his work without offending customers, the Eleventh Circuit reversed the district court's grant of summary judgment to the employer and remanded. *Id.* at 1425.[3]

In the case at bar, Ray's job as a grocery clerk involved regular interaction with customers. Accordingly, the Court finds that interacting with customers without offending them was an essential function of Ray's job. *Taylor*, 133 F.3d at 1424. Unlike in *Taylor*, however, the Court finds it to be beyond dispute that Ray could not perform his work without offending customers. It is undisputed that Ray's coprolalia caused him to blurt out curse words and racial slurs, which are by their nature offensive. Even Ray has conceded that the words blurted out by a person with coprolalia are offensive. *See* Doc. 25 at 4 (describing coprolalia as a manifestation of Tourette's Syndrome causing sufferers to "blurt out offensive words and phrases."). Because Ray was unable to perform his duties as a clerk

without blurting out offensive words in front of Kroger's customers, the Court finds that Ray was not otherwise qualified for his job. Accordingly, summary judgment for Kroger is appropriate.

## C. Terminated because of a disability

 Even if the Court were to find that Ray was "otherwise qualified" to perform his job as a grocery clerk, summary judgment for Kroger nevertheless would be appropriate because Ray cannot sustain his burden of showing that he was discharged because of his disability. Specifically, Ray has presented no evidence that Kroger terminated him for any reason other than his constant outbursts of vulgar language and racial slurs. As the Fourth Circuit has stated, "The law is well settled that the ADA is not violated when an employer discharges an individual based upon the employee's misconduct, even if the misconduct is related to a disability." *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 429 (4th Cir.1999) (employer not liable under ADA for terminating employee suffering from schizophrenia and post traumatic stress syndrome after employee threatened a co-worker). Stated another way, "An employee who is fired because of outbursts at work directed at fellow employees has no ADA claim." *Hamilton v. Southwestern Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir.1998) (employer not liable for firing employee with post traumatic stress syndrome because of emotional outburst directed at a manager); *see also Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n. 3 (4th Cir.1997) (misconduct related to a disability is not itself a disability; an employer is free to fire an employee based

---

**3.** In *Taylor*, several of the defendant's employees testified that they had never heard the plaintiff do or say anything that could be considered to be offensive, and that they were personally unaware of any complaints about the plaintiff. *Id.* at 1424.

on misconduct related to a disability). Even though Ray's constant blurting out of vulgar language and racial slurs was caused by Ray's Tourette's Syndrome, Kroger had a legitimate basis for terminating his employment.[4] Summary judgment for Kroger is therefore appropriate.

## IV. Conclusion

Although Ray is not disabled in activities of cooking, driving or working, he is disabled in the major life activity of communicating with others over extended periods of time. Because he is unable to perform his job as a clerk without uttering curse words and racial slurs which are offensive to Kroger's customers, he is not otherwise qualified. Even if he were otherwise qualified, there is no evidence that he was fired for any reason other than his constant outbursts of curse words and racial slurs. Accordingly, Ray has failed to make out a prima facie case of discrimination and the Court therefore GRANTS Kroger's motion for summary judgment (Doc. 18).

So ORDERED.

---

**4.** In responding to Kroger's summary judgment motion, Ray argues that he should have been afforded the "reasonable accommodation" of Kroger's "understanding" of his condition. *See* Doc. 25 at 6. Because the ADA does not require an employer to maintain indefinitely an employee who subjects the employer's customers repeatedly to curse words and racial slurs, the Court therefore finds Ray's proposed accommodation to be unreasonable as a matter of law.